**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KWAKU ATTAKORA,<br><br>    Plaintiff,<br><br>        v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    Defendants. | **Civil Action No. 12-1413 (CKK)** |

**MEMORANDUM OPINION**
(July 1, 2013)

Plaintiff Kwaku Attakora filed suit against Defendants the District of Columbia and Mannone A. Butler, alleging the Defendants wrongfully terminated the Plaintiff's employment with the District on the basis of his national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the District of Columbia Human Rights Act, D.C. Code § 2-1403.01 *et seq.*  The Plaintiff further alleges that the Defendants interfered with and/or retaliated against the Plaintiff's exercise of his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601 *et seq.*[1]  The Court granted in part the Defendants' motion to dismiss the Plaintiff's Amended Complaint, and dismissed the Plaintiff's FMLA claim without prejudice.  Presently before the Court is the Plaintiff's [29] Motion for Leave to File Second Amended Complaint for Damages.  The Defendants oppose the Plaintiff's motion on the grounds the proposed amendments to the Plaintiff's FMLA claim would be futile.  Upon

---

[1]  In response to the Defendants' motion to dismiss, the Plaintiff withdrew Counts Three and Four of the Amended Complaint, alleging unlawful discrimination based on the Plaintiff's age.

consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court finds the Plaintiff's proposed amendments to his FMLA claim would not survive a motion to dismiss and thus are futile.  Accordingly, the Plaintiff's motion is DENIED.

## I. BACKGROUND

For purposes of this motion, the Court accepts as true the well-pleaded factual allegations in the Plaintiff's proposed Second Amended Complaint.  The Plaintiff is an African-American male born in Ghana.  Second Am. Compl. ¶ 9-10.  The Plaintiff is a citizen of the United States. *Id.*  Since April 2008, the Plaintiff has worked as a Senior Statistician for the District of Columbia Criminal Justice Coordinating Council ("CJCC").  *Id.* at ¶ 11.  At various points beginning in early 2010, Defendant Butler, a "native born" African-American, served as the Interim Executive Director of CJCC and the Deputy Director of CJCC, before being appointed Executive Director in May 2011.  *Id.* at ¶¶ 7, 13, 19, 20.

The Plaintiff alleges that following her initial appointment as Interim Executive Director, Defendant Butler "made derogatory statements about Africans," including stating on several occasions that "[t]hese Africans are just lazy and don't like to work."  Second Am. Compl. ¶ 14. In May 2010, the Plaintiff asked to use annual leave to travel to Ghana for the funeral of a relative.  *Id.* at ¶ 15.  The Plaintiff alleges that Defendant Butler denied the request, commenting that "[y]ou Africans always want to go and stay for a long time and I cannot let you go," and "[h]ow can anybody go to Africa?"  *Id.*  The Plaintiff generally alleges that Defendant Butler "continual[ly] bad-mouth[ed]" Africans, but does not identify any statements purportedly made by Defendant Butler after May 2010.  *Id.* at ¶ 18.

In January 2011, the Plaintiff became ill, requiring consultation with various physicians

---

[2]  Pl.'s Mot., ECF No. [29]; Defs.' Opp'n, ECF No. [33]; Pl.'s Reply, ECF No. [34].

and health care providers.  Second Am. Compl. ¶ 21.  The Plaintiff underwent surgery for several

medical conditions in May 2011, and did not return to work until May 10, 2011.  *Id.* at ¶¶ 27-29.

The Plaintiff alleges that since the surgery, he continues to "be under active care of a health care

provider" "on a regular basis several times a month."  *Id.* at ¶ 29.

According to the Plaintiff, after the Plaintiff suffered an adverse reaction to certain pain

medication prior to undergoing surgery, his treating physician

> recommended that he seek homeopathic, naturopathic, plant medicines and "non-
> traditional" treatment so as to cleanse his body and lessen the pain which had
> become chronic; in subjecting the Plaintiff to an assortment of diagnostic tests and
> remedies, the Plaintiffs treating physicians also recommended to the Plaintiff that
> he consult with a medical specialist in tropical medicine since he comes from
> tropical Africa.

Second Am. Compl. ¶ 25.  Based on these recommendations, the Plaintiff alleges he was

"compelled to travel to Ghana for further treatment," though not before his May 2011 surgery.

*Id.* at ¶¶ 26, 31.  Shortly before undergoing surgery, the Plaintiff contacted the Chief

Technological Officer for the District of Columbia in order to determine whether he could

arrange to be accessible on his CJCC-issued telephone while in Ghana.  *Id.* at ¶ 31.  Defendant

Butler, upon learning of the Plaintiff's contact with the Chief Technological Officer, allegedly

became "visibly angry."  Id. at ¶ 32.  The Plaintiff purportedly responded by explaining he

intended on taking FMLA leave to go Ghana, and had previously been instructed that he needed

to remain in contact with CJCC even when traveling abroad.  Id.  The following day, Defendant

Butler issued a letter of reprimand to the Plaintiff for his inquiry to the Chief Technological

Officer. Id. at ¶ 33.

On May 10, 2011, the Plaintiff returned to work and for the first time brought eleven- and

thirteen-year-old daughters to work.  Second Am. Compl. ¶ 34.  According to the Second

Amended Complaint, "Defendant Butler questioned the Plaintiff about the propriety of bringing

his children to work." *Id.*   The Plaintiff asserts that at least four other CJCC employees not of African origin have brought their children to work without incident. *Id.* at ¶ 35.   The Plaintiff alleges that on May 12 he met with Defendant Butler to discuss "that other CJCC employees had received their pay increases but that he had not." *Id.* at ¶ 36.   The Plaintiff contends that "Defendant Butler stated that she would look into it but she never got back to the Plaintiff regarding the pay increase." *Id.*

The Plaintiff met with Defendant Butler on May 13, 2011, and formally requested FMLA leave to travel to Ghana.   Second Am. Compl. ¶ 37.   "Defendant Butler did not respond to the statement made by the Plaintiff." *Id.*   The Second Amended Complaint offers no further details regarding this meeting.   On May 20, 2011, the Plaintiff again met with Defendant Butler regarding his plan to take FMLA leave "beginning in mid-June, 2011." *Id.* at ¶ 39.   The Plaintiff claims that he asked Defendant Butler "whether there were job assignments she needed completed before he took the leave," but "Defendant Butler again did not respond to the Plaintiff." *Id.*

The Plaintiff prepared a report and presentation for an emergency CJCC meeting on June 2, 2011.   Second Am. Compl. ¶ 40.   The Plaintiff alleges that the meeting was "acknowledged as successful by the participants." *Id.* at ¶ 41.   The following day, Defendant Butler called the Plaintiff into her office and purportedly told him "[i]t's not working." *Id.* at ¶ 42.   Upon inquiry from the Plaintiff, Defendant Butler explained "it's about your performance." *Id.*   In response, the Plaintiff purportedly told Defendant Butler that "it was apparent to him that she did not like Africans including himself but she should not let her subjective feelings and prejudices cloud her judgment about his work performance." *Id.*   The Plaintiff indicated he would begin his FMLA leave in mid-June and then planned to return to work. *Id.*   Defendant Butler allegedly concluded

the discussion by saying that the Plaintiff would hear from her on Monday. *Id.* "On Monday, June 6, 2011 at approximately 4:06 p.m., Defendant Butler asked the Plaintiff to come to her office and she terminated him from his employment with CJCC effective June 20, 2011." *Id.* at ¶ 43. The Plaintiff alleges that the person hired to replace him is not Ghanaian or African. *Id.* at ¶ 45. At some point after his termination, the Plaintiff purportedly traveled to "received further medical treatment," which revealed issues in the Plaintiff's "blood stream and organs which had not been detected" by medical tests in the United States. *Id.* at ¶ 55.

The Plaintiff filed suit on August 27, 2012, asserting claims for racial discrimination, national origin discrimination, age discrimination, unlawful retaliation, and violations of the FMLA. Compl., ECF No. [1]. After the Defendants moved to dismiss the original Complaint, the Plaintiff sought leave to file the Amended Complaint, which the Court granted. *See* Am. Compl., ECF No. [18]; Unredacted Am. Compl., ECF No. [15]. In response to the Defendants' motion to dismiss the Amended Complaint, the Plaintiff withdrew Count Three (unlawful discharge based on the Plaintiff's age in violation of the Age Discrimination in Employment Act) and Count Four (unlawful discharge based on the Plaintiff's age in violation of the District of Columbia Human Rights Act). Pl.'s Opp'n to Def.'s Mot. to Dismiss Am. Compl., ECF No. [21]. The Court denied the Defendants' motion to dismiss the Plaintiff's national origin discrimination claims, but dismissed without prejudice the Plaintiff's claim of interference with and/or retaliation against the Plaintiff's exercise of his rights under the FMLA for failure to state a claim. The Plaintiff subsequently moved for leave to file a Second Amended Complaint, seeking to revive the Plaintiff's FMLA claim. The Defendants oppose the Plaintiff's motion on the grounds the proposed amendments do not cure the deficiencies identified in the Court's prior Memorandum Opinion.

## II.  LEGAL STANDARD

Pursuant to Federal Rules of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires."   Fed. R. Civ. P. 15(a)(2).   However, the Court "may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss."   *In re Interbank Funding Corp. Securities Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010). "An amendment is futile if the proposed claim would not survive a motion to dismiss." *Commodore-Mensah v. Delta Airlines, Inc.*, 842 F. Supp. 2d 50, 52 (D.D.C. 2012) (citation omitted).   Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss all or part of a complaint if it "fail[s] to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).   Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."   *Twombly*, 550 U.S. at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 129 S. Ct. at 1949.

## III.  DISCUSSION

Count Three of the proposed Second Amended Complaint alleges that the Defendants interfered with the Plaintiff's attempts to take leave under the FMLA and retaliated against the Plaintiff for attempting to exercise his rights under the statute.   Second Am. Compl. ¶¶ 62-63. The proposed Second Amended Complaint offers scant detail regarding the scope of "treatment" the Plaintiff intended to seek in Ghana, except to say that his treating physician "recommended"

that the Plaintiff seek "non-traditional" treatments to "cleanse his body and lessen [his] pain." *Id.* at ¶ 25. The Plaintiff's treating physician also recommended that the Plaintiff consult with a "medical specialist in tropical medicine" since the Plaintiff is from a tropical region in Africa. *Id.* at ¶ 26. "Based on the[se] recommendations," the Plaintiff elected to "seek medical treatment with physicians who specialized in tropical medicine, homeopathic, naturopathic and herbal medicine in Ghana due to the fact that such physicians there [sic]." *Id.* The Plaintiff modifies paragraph 26 in his Reply brief to indicate the word "abounded" was omitted from the last sentence of the paragraph. Pl.'s Reply at 2. The Plaintiff alleges without elaboration that after his termination, the Plaintiff traveled to Ghana "and received further medical treatment." *Id.* at ¶ 55.

These allegations, although more robust than the allegations in the Plaintiffs original and first amended complaints, fall short of stating a claim under for relief under the FMLA. The Family and Medical Leave Acts permits an employee to take up to twelve weeks of leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(1)(D). Pursuant to the Department of Labor's FMLA regulations, "[a]n employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment." 29 C.F.R. § 825.123(a). "Importantly, § 825.123 uses the word 'must' to imply that the employee's absence is necessary for that employee's treatment. Alternatively, an absence for unnecessary treatment or no treatment at all means that the employee is not sufficiently incapacitated so as to render her unable to perform her duties." *Jones v. C & D Techs., Inc.*, 684 F.3d 673, 677 (7th Cir. 2012). As the Seventh Circuit's analysis indicates, in order to show that the employee must be absent

from work to receive medical treatment for a serious health condition, the employee must establish: (1) that the treatment to be received was necessary; and (2) that to undergo the treatment, the Plaintiff needed to be absent from work. *Id.* The Plaintiff's allegations in the Second Amended Complaint fail to satisfy either prong of the "necessity" requirement.

First, the Plaintiff must allege facts sufficient to show that the treatment sought was necessary. Absences from work are only protected by the FMLA "if they [are] *required* for the diagnosis and treatment of [the employee's] medical condition." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 165 (1st Cir. 1998) (emphasis added). For example, in the context of a motion for summary judgment, the Seventh Circuit explained that the plaintiff "did not submit an affidavit from his own doctor or any other medical personnel demonstrating the necessity of the 'treatments' he supposedly received, and [his] own self-serving assertions regarding the severity of his medical condition and the treatment it required are insufficient" to create a genuine issue of material fact regarding the necessity requirement. *Haefling v. United Parcel Service, Inc.*, 169 F.3d 494, 500 (7th Cir. 1999); *see also Isaacowitz v. Dialysis Clinic Inc.*, No. 09-638, 2010 WL 8913513, at *6 (D.N.M. Feb. 22, 2010) (holding that because the letter from the plaintiff's physician "did not state that the vacation was medically necessary[,] Isaacowitz cannot demonstrate he was entitled to FMLA protected leave.").

Here, the Plaintiff, having returned to work, decided to travel to Ghana to obtain "treatment" recommended by his treating physician, but the Plaintiff does not allege that his treating physician considered the "non-traditional" solutions or consultation with a tropical disease expert *necessary* to the diagnosis or treatment of the Plaintiff's condition. For his part, the Plaintiff emphasizes that further testing in Ghana revealed certain medical issues not previously diagnosed. In order for leave for diagnostic testing to be protected under the FMLA,

the Plaintiff must show that the diagnostic test itself was necessary.  The fact that testing turned out to be *useful* is insufficient; the Plaintiff must allege that a medical professional reasonably believed at the time the Plaintiff request leave, that the testing was necessary for the diagnosis or treatment of the Plaintiff's condition.  Nor does the fact the Plaintiff traveled to Ghana even after his termination show the "treatment" was necessary from the perspective of a medical professional.  The Plaintiff also suggests in his Reply that "he received full and comprehensive treatment for his serious medical condition" after it was diagnosed in Ghana.  Pl.'s Reply at 2.  The conclosury nature of this assertion notwithstanding, this allegation does not appear in the Plaintiff's proposed Second Amended Complaint, and therefore cannot be relied upon by the Plaintiff to show why amending the complaint would not be futile.  *See King v. Holder*, --- F. Supp. 2d ---, 2013 WL 1749342, at *6 (D.D.C. Apr. 24, 2013).  The Second Amended Complaint does not allege the Plaintiff's physician (or any other medical professional) viewed the "treatment" as medically necessary, before or after the Plaintiff's termination.  The Plaintiff's proposed amended FMLA allegations thus fail to sufficiently allege that the Plaintiff was entitled to FMLA-protected leave for his trip to Ghana.[3]

Second, the Plaintiff must demonstrate that he needed to be absent from work in order to undergo the medically necessary treatments.  In *Suchanek v. University of Kentucky*, No. 3:10-19, 2011 WL 3045986 (E.D. Ky. July 25, 2011), the plaintiff was able to complete her radiation treatments for breast cancer during her lunch hour.  *Id.* at *6.  The court noted that "[h]er actions prove that the treatments did not render her unable to perform the functions of the position.  In

---

[3]   To be clear, the Court does not suggest that the Plaintiff is required to produce an affidavit or documentary evidence at this stage of the proceedings.  Rather, the Plaintiff's *allegations* are insufficient to show, for purposes of a motion to dismiss, that the "treatment" the Plaintiff sought in Ghana was necessary.

other words, Suchanek's ability to complete the treatments without missing work indicates that they were not FMLA-qualifying in the first place." *Id.* (citation omitted); *see also Jones v. C & D Techs., Inc.*, No. 1:10-696, 2011 WL 4479053, at *5 n.7 (N.D. Ind. Sept. 27, 2011) ("The Court can envision . . . cases in which it would be a close question whether the number of hours taken by the Plaintiff was reasonably necessary for a particular treatment or illness and therefore qualified by the FMLA.").

The proposed Second Amended Complaint does not allege facts sufficient to show that the Plaintiff needed to miss *any* work for the "treatments," much less travel abroad for an extended period of time to receive the "treatments." The only factual allegation the Plaintiff provides regarding this issue is that he decided to travel to Ghana because there are a lot of physician specializing in tropical medicine, homeopathic, naturopathic and herbal medicine in Ghana. Second Am. Compl. ¶ 26. The fact that certain treatment is *available* overseas is not equivalent to showing that the Plaintiff *needed* to miss work to obtain the treatment. This is not to say that the Plaintiff must allege Ghana was the *only* place the Plaintiff could have received necessary medical treatments in order to state a claim. But the Plaintiff must allege facts sufficient to demonstrate that he *needed* to be absent from work to obtain the treatments, be it due to the nature of the treatment, or the lack of availability of the treatment in a particular geographic region. The imperative nature of 29 C.F.R. § 825.123(a) that an employee who "*must* be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment," would be eviscerated if an employee could create the need to be absent from work by electing to receive medical treatment in a distant place, even though it is available in a location that would not require the employee's absence from work., and otherwise would not require the

Plaintiff to miss work  The proposed Second Amended Complaint does not contain allegations sufficient to show that the Plaintiff needed to be absent from work in order to receive the purportedly necessary "treatments," and therefore once again fails to state a claim under the FMLA.

## IV.  CONCLUSION

Despite three attempts, the Plaintiff has failed to state a claim for relief under the Family and Medical Leave Act.  As a threshold issue, in order to show that the leave he requested was protected by the FMLA, the Plaintiff must allege that he needed to be absent from work in order to obtain necessary medical treatment as defined by the statute.  The bare allegations in the Plaintiff's proposed Second Amend Complaint fall far short of satisfying this necessity requirement.  Based on the allegations in the proposed complaint, the Plaintiff cannot show that the leave he requested was protected by the FMLA, thus the Plaintiff cannot sustain a claim that the Defendants unlawfully interfered with or retaliated against the Plaintiff for attempting to exercise his rights under the FMLA.  Because the Plaintiff's proposed amendments would not survive a motion to dismiss for failure to state a claim, the Plaintiff's [29] Motion for Leave to File Second Amended Complaint for Damages is DENIED.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE